**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DIANA ELIZABETH CARTAGENA HUESO, | Civil Action No. 26-1455 (ZNQ) |
| Petitioner, | |
| v. | **OPINION** |
| LUIS SOTO, *et al.*, | |
| Respondents. | |

**QURAISHI, District Judge**

This matter comes before the Court on Petitioner's habeas petition challenging her ongoing immigration detention. (ECF No. 1.) Following an order to answer, the Government filed a response to the petition. (ECF No. 7.) For the following reasons, Petitioner's habeas petition will be **GRANTED**, and Petitioner will be **IMMEDIATELY RELEASED**.

**I.    BACKGROUND**

Petitioner is a 29-year-old native and citizen of El Salvador. (ECF No. 7-2 at 2.) In August 2016, she crossed the border and was encountered by border patrol in the Rio Grande Valley, Texas Border Patrol Sector. (*Id.* at 3.) Petitioner was taken into custody pursuant to 8 U.S.C. § 1225(b)(1) and was determined to be inadmissible on August 28, 2016. (ECF No. 7-3 at 2.) Petitioner was referred for a credible fear interview, found to have a credible fear of returning to her home country, and was therefore referred for removal and asylum proceedings. (ECF Nos. 7-4; 7-5.) On or about October 19, 2016, however, Petitioner was released from detention on her own recognizance, without being paroled from detention. (ECF No. 7-5 at 5.)

Petitioner remained in the United States. There is no indication she has a criminal record.[1] (ECF Nos. 7-1 at 2, 7-2 at 2.) She is married and has one five-year-old child who is presumably an American citizen.[2] (*See* ECF No. 1 ¶¶ 29–30.) On January 27, 2026, she and her husband were arrested by immigration officials in Elizabeth, New Jersey on their way to a doctor's appointment. (ECF No. 1 ¶ 29.) Her child is in the care of an aunt. (*Id.*)

Petitioner was initially placed in Delaney Hall Detention Facility in Newark, New Jersey. (ECF No. 7-6.) On February 14, 2026, she filed her Verified Petition and Complaint for Declaratory Injunctive Relief. (ECF No. 1.) In response to her Petition, on February 17, 2026, the Court ordered the Government to: file an expedited answer within 7 days; conduct a bond hearing under § 1226 within 10 days; and to refrain from transferring her "out of New Jersey until this bond process is complete." (ECF No. 2.)[3] Unbeknownst to the Court, however, Petitioner had been transferred to Oklahoma the day before on February 16. (ECF No. 6 at 1.) The following day on February 17—the same day she was ordered not to be transferred from New Jersey—she was transferred from Oklahoma to Texas. (*Id.*) Petitioner was then transferred from Texas back to Oklahoma on February 19. (*Id.*) The Court was first alerted to these transfers by Petitioner. (ECF No. 4.) The Government failed to disclose these transfers after initially receiving the Court's February 17 Order, and in its response to the petition, does not explain its initial silence nor whether the second transfer occurred before or after the Court issued its Order. To date, the Government has not bothered to explain why Petitioner was transferred three times in two days and argues that it is not obligated to transfer Petitioner back to New Jersey despite the Court's

---

[1] The parties' briefing is silent with respect to Petitioner's criminal history, and the relevant field for "criminal history" is left blank (rather than marked "none") on the two Records of Deportable/Inadmissible Alien the Government attached to its Answer to the Petition.
[2] The parties' briefing is also silent as to where Petitioner's child was born.
[3] In her Verified Petition, Petitioner speculated that the basis for her detention was § 1225(b)(2). Accordingly, the Court's Order addressed her detention under that Section. The Government has since cited § 1225(b)(1) as the basis for her detention.

February 17 Order. (ECF No. 6.) Petitioner has remained in custody since that time. (ECF No. 7 at 2.) The Government maintains that she is subject to mandatory detention under 8 U.S.C. § 1225(b)(1). (*Id.*)

II. **LEGAL STANDARD**

Under 28 U.S.C. § 2241(c), habeas relief may be extended to a prisoner only when he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has jurisdiction over such a petition if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989).

III. **DISCUSSION**

In her habeas petition, Petitioner contends that her continued detention under 8 U.S.C. § 1225(b) is unlawful. The Government insists that she remains subject to § 1225(b)(1) in light of the circumstances of her initial detention in 2016 and that she is therefore properly subject to mandatory detention until such time as her removal proceedings conclude. As this Court has previously explained,

> Aliens who attempt to enter the United States illegally and who are detained shortly after making an unlawful crossing of the border are "treated as an applicant for admission" and are subject to the terms of § 1225(b)(1). *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139–40 (2020). As the Third Circuit has explained, "[u]nder 8 U.S.C. § 1225(b)(1) and its companion regulations, two classes of aliens are subject to [detention and] expedited removal [proceedings under § 1225(b)(1)] if an immigration officer determines they are inadmissible due to misrepresentation or lack of immigration papers: (1) aliens 'arriving in the United States,' and (2) aliens 'encountered within 14 days of entry without inspection and within 100 air miles of any U.S. international land border.'" *Castro v. United States Dep't of Homeland Sec.*, 835 F.3d 422, 425 (3d Cir. 2016). Aliens subject to this provision will generally be issued an expedited removal order unless they indicate to immigration officers that they have a credible fear of persecution should they be deported,

> in which case they are referred for further proceedings regarding their expressed fear. *Id.* Aliens who are taken into custody under § 1225(b)(1) are subject to mandatory detention throughout their removal and credible fear proceedings, though the Government may in its discretion temporarily parole such aliens into the United States "for urgent humanitarian reasons or significant public benefit." *See Jennings v. Rodriguez*, 583 U.S. 281, 287–88 (2018). Detention under the statute remains mandatory until the conclusion of the alien's removal proceedings, after which an alien would have a final order of removal, and detention under § 1225(b)(1) ends. *Id.* at 300-03.

*Arcos Tasigchana v. Soto*, Civ. No. 25-18252, 2026 WL 266170, at *1 (D.N.J. Feb. 2, 2026).

As the statute and binding precedent make clear, aliens subject to expedited removal under 8 U.S.C. § 1225(b)(1) are also subject to mandatory detention throughout their removal proceedings, and are generally not entitled to release unless the Government chooses to parole them. *Id.* The parole statute, 8 U.S.C. § 1182(d)(5)(A), provides that an alien who is paroled "shall forthwith return or be returned to the custody from which he was paroled" and continue to be detained pursuant to the original detention statute.

However, where an alien is released outright, even where he is later paroled, he cannot be returned to mandatory detention under the statute because the Government has effectively abandoned its mandatory detention authority by releasing the alien into the United States without parole. *See Salas v. Soto*, Civ. No. 25-17339, 2026 WL 485712, at *3 (D.N.J. Feb. 21, 2026).

In this matter, the Government released Petitioner on her own recognizance in 2016, and left her at large in the United States for nearly a decade before returning her to custody. While release for such a length of time is "not . . . regarded as an admission of the alien" and will permit an alien to be returned to mandatory detention status, *see* 8 U.S.C. § 1182(d)(5)(A), the outright release that Petitioner received is a legitimate change in status. An individual like Petitioner who has been released into the United States without parole is no longer considered to be standing at

the border. Her status must be considered in light of the decade during which the Government permitted her to be at liberty within the United States. The elapsed decade means that Petitioner is no longer an "arriving alien" subject to the mandatory detention requirements of 8 U.S.C. § 1225(b)(1). The Government has abandoned its right under the statute to take Petitioner into custody. Her continued detention is therefore unlawful.

In previous cases where the Government has improperly asserted § 1225(b) as a basis for arrest and detention, this Court has salvaged the Government's position by *sua sponte* construing its detention as one under § 1226, ordering that the detainee be afforded a bond hearing, and ordering the Government not to move the detainee from this District pending that bond hearing. The Court even attempted to do that here. No more. On the individual merits of this case, the undersigned now finds that this relief is insufficient and will instead order that Petitioner be released.

Moreover, a much broader issue must now be addressed because it separately warrants release. The Government's handling of Petitioner's detention is emblematic of its approach to immigration enforcement in this state. On the merits, its detentions are illegal. The Government knows this. Its reliance on § 1225 has been roundly rejected: "federal courts have in near unanimity similarly rejected respondents' position in approximately 300 cases to date, a number which climbs with each passing day."[4] *Tyagi v. Soto*, Civ. No. 26-962, 2026 WL 478184, at *1 (D.N.J. Feb. 20, 2026) (citing *Demirel v. Fed. Det. Ctr. Phila.*, Civ. No. 25-5488, 2025 WL 3218243, at *4 (E.D. Pa. Nov. 18, 2025)); *but see Buenrostro-Mendez v. Bondi*, Civ. No. 25-20496,

---

[4] The vast majority of these cases deal with the Government's novel interpretation of 8 U.S.C. 1225(b)(2). In this case, at the very least, the Government is similarly overextending its overbroad interpretation to the similar provisions of 8 U.S.C. § 1225(b)(1). The point remains, however, that the overwhelming majority of courts have made clear that § 1225 may not be applied to those who are subject only to the more general authority, and the concomitant procedural protections, of 8 U.S.C. § 1226(a).

2026 WL 323330 (5th Cir. Feb. 6, 2026) Those orders have not been stayed. They remain valid authority.

Arguably worse, while the procedures for the Government's immigration arrest and detention may have had the initial appearance of negligence, they have since slid downward into manifest recklessness.[5] Immigrants are swept up into custody and shifted repeatedly around the country without warning or explanation.[6]

Efforts by the Court in this District to protect detainees' rights have been largely frustrated by the Government. Earlier this month, the U.S. Attorney's Office conceded to violating 72 orders[7] issued in immigration habeas cases in this District alone. *Kumar v. Soto*, Civ. No. 26-777, Docket Entry No. 21. (D.N.J. Feb. 13, 2026). That number by itself is objectively appalling, but at least one judge has indicated that it was underreported. *See Singh v. Tsoukaris*, Civ. No. 26-1531, Docket Entry No. 10 at 3 (D.N.J. Feb. 20, 2026). The U.S. Attorney's Office has couched these violations as unintentional. *Kumar v. Soto*, Civ. No. 26-777, Docket Entry No. 10 (D.N.J. Feb. 13, 2026). Sadly, the well-deserved credibility once attached to that distinguished Office is now a presumption that "has been undeniably eroded." *Singh*, Docket Entry No. 10 at 2. The Government's continued actions after being called to task can now only be deemed intentional. The undersigned will not stand idly by and allow this intentional misconduct to go on. It ends today.

---

[5] To be clear, the Court invokes the legal meaning of "reckless": "characterized by the creation of a substantial and unjustifiable risk of harm to others and by a conscious (and sometimes deliberate) disregard for or indifference to that risk; heedless; rash." Black's Law Dictionary (12th ed. 2024).

[6] Again, this case is an example of the haphazard treatment of detainees' cases. Petitioner reported that she sought at least three times to schedule her bond hearing. (ECF No. 4 at 1.) Each time, the Immigration Court rejected her requests, based on nonexistent defects in the formalities of submitted documents. (*Id.*) The Government has not disputed Petitioner's characterizations. (*Id.*)

[7] The U.S. Attorney's Office expressly admitted to violating 56 orders while acknowledging its noncompliance with 16 additional orders requiring the Government to file status reports by a given deadline. The Court construes the latter as violations as well, bringing the total violations to 72.

The U.S. Attorney's Office and the Department of Homeland Security are cautioned that further arrests and detentions under § 1225(b) that come before the undersigned will likely trigger the issuance of an Order to Show Cause and the scheduling of an in-person hearing requiring individuals with personal knowledge from the Office and the Department to testify under oath as to the specific facts and legal positions associated with the detention at issue.

## IV. CONCLUSION

For the reasons expressed above, Petitioner's habeas petition (ECF No. 1) will be **GRANTED**, and Petitioner will be **RELEASED IMMEDIATELY**. An appropriate order follows.

Date: February 26, 2026

ZAHID N. QURAISHI
UNITED STATES DISTRICT JUDGE